**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2455-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MACARTHUR MASON,

    Defendant-Appellant.

_____

Argued January 29, 2025 – Decided May 29, 2025

Before Judges Rose, DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 21-12-3234.

Rachel A. Neckes, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel A. Neckes, of counsel and on the briefs).

Kevin J. Hein, Assistant Prosecutor, argued the cause for respondent (Grace C. MacAulay, Camden County Prosecutor, attorney; Kevin J. Hein, of counsel and on the brief).

PER CURIAM

A jury convicted defendant MacArthur Mason of armed robbery, conspiracy to commit robbery, and weapons offenses for his part in stealing $1,800 in cash from William Yocco, while beating Yocco with a baseball bat. The incident occurred on August 22, 2021, around 11:19 a.m., at the victim's business in Camden. Yocco was unable to identify defendant or his cohort, Edward Williams, other than to describe their clothing.[1]

Surveillance video footage from the church across from Yocco's business was blurry but depicted two individuals entering and exiting the building. One person wore a green shirt; the other wore a blue shirt under a black hooded sweatshirt. Video footage from a Real Time Tactical Operations Intelligence Center (RT-TOIC) camera, located a few blocks from Yocco's business, showed two people walking in the same direction as the individuals depicted in the church footage. The State argued both individuals captured in the RT-TOIC video resembled the persons depicted in the church video, except they had

---

[1] Defendant and Williams were charged in a five-count Camden County indictment with: first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and :15-1(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). The jury acquitted defendant of the aggravated assault charge. Defendant was tried separately from Williams, who is not a party to this appeal.

2

removed their outer layers and one was holding cash. Their faces were captured on the RT-TOIC footage.

The next month, on September 30, 2021, police questioned defendant about the robbery following his arrest that same day for unrelated drug charges.[2] Defendant identified himself and Williams in still photographs from the RT-TOIC surveillance video. During the interrogation, the lead investigating officer, Camden County Police Detective (CCPD) Kenneth Egan, called defendant a liar more than a dozen times.

Defendant moved pretrial to suppress the statement he gave to law enforcement, arguing he did not voluntarily waive his Miranda[3] rights because Egan failed to advise he was a suspect in the robbery before questioning him about the incident. Egan testified at the N.J.R.E. 104(c) hearing, during which defendant's unredacted statement was played for the judge, who denied defendant's motion.

---

[2] We glean from the record defendant thereafter was charged in an unrelated indictment with third-degree possession of a controlled dangerous substance (CDS) and third-degree possession of CDS with the intent to distribute stemming from the September 30, 2021 arrest.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

Defendant's redacted statement was played during Egan's testimony at defendant's November 2022 trial. But Egan's comments about defendant's veracity and a reference to defendant's arrest for the unrelated charges were not redacted. Defendant did not object to the redacted statement played in court. Immediately before and after the statement was played for the jury, the same judge who had denied defendant's motion, issued a limiting instruction concerning Egan's comments and opinions during the interrogation.

The State's proofs were largely circumstantial. During the two-day trial, the State presented the testimony of five witnesses. In addition to defendant's statement, the State also played the surveillance videos for the jury. Defendant did not testify but moved several photographs into evidence. In his summation, the prosecutor characterized defense counsel's comments on law enforcement's investigation as a "distraction." Shortly after commencing deliberations, the jury requested playback of defendant's statement to police and both surveillance videos. Defendant was sentenced to an aggregate prison term of ten years subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, on the robbery and conspiracy convictions.[4]

---

[4] Defendant's aggregate sentence also included concurrent prison terms for four third-degree possession with intent to distribute CDS convictions and one third-

On appeal, defendant raises the following points for our consideration:

POINT I

[DEFENDANT]'S WAIVER OF HIS <u>MIRANDA</u> RIGHTS WAS NOT KNOWING AND VOLUNTARY BECAUSE THE INTERROGATING DETECTIVE MISLED HIM TO BELIEVE THE INTERVIEW WAS ABOUT A MINOR, UNRELATED DRUG CHARGE.

POINT II

[DEFENDANT] WAS DEPRIVED OF A FAIR TRIAL WHEN THE JURY HEARD DETECTIVE EGAN ACCUSE [DEFENDANT] OF LYING FOURTEEN TIMES, EXPRESS HIS LAY OPINION ON THE VIDEO FOOTAGE, AND AFFIRM THAT [DEFENDANT] HAD BEEN ARRESTED ON UNRELATED CHARGES.
(Not raised below)

A.  The interrogation video included Detective Egan's impermissible opinion evidence regarding [defendant]'s credibility and guilt.

B.  The interrogation video included Detective Egan's reference to [defendant]'s unrelated arrest, constituting impermissible [N.J.R.E.] 404(b) evidence.

C.  The erroneous admission of Detective Egan's lay opinion and evidence of [defendant]'s prior arrest was plain error.

_____

degree distribution of CDS conviction charged in five separate indictments, including the indictment noted above.  All charges under these indictments apparently were resolved via a global plea agreement with the State.  None of defendant's CDS convictions is at issue on this appeal.

THE PROSECUTOR'S STATEMENTS DURING SUMMATION, IN WHICH HE USED AN EXTENDED METAPHOR ABOUT MAGIC TO CHARACTERIZE DEFENSE COUNSEL'S ARGUMENTS AS A "DISTRACTION" AKIN TO A MAGIC TRICK, DEPRIVED [DEFENDANT] OF A FAIR TRIAL.
(Not raised below)

POINT IV

THE CUMULATIVE EFFECT OF THE ERRORS DISCUSSED DENIED [DEFENDANT] A FAIR TRIAL AND REQUIRE REVERSAL.
(Not raised below)

POINT V

THE SENTENCING COURT FAILED TO MERGE [DEFENDANT]'S CONVICTION FOR CONSPIRACY WITH HIS CONVICTION FOR ARMED ROBBERY.
(Not raised below)

Having considered defendant's challenges to his convictions in view of the record and guiding legal principles, we are not persuaded any errors, singly or cumulatively, warrant reversal. We therefore affirm defendant's convictions. The State having conceded the trial judge failed to merge the robbery and conspiracy convictions in sentencing defendant, we remand the matter for entry of a corrected judgment of conviction (JOC), vacating the sentence imposed on

6

the conspiracy conviction and merging the conspiracy conviction with the robbery conviction.

## I.

In point I, defendant renews his argument that his <u>Miranda</u> rights were not knowingly and intelligently waived. Defendant contends, "Egan affirmatively misled him to believe that their conversation would concern a minor narcotics charge and not a much more serious allegation of first-degree armed robbery." Seemingly for the first time on appeal, defendant raises two additional contentions: the judge failed to consider he had used drugs earlier that day; and "Egan used particularly coercive tactics."[5]

During the N.J.R.E. 104(c) hearing, Egan testified he reviewed video evidence, generated still photographs from the videos, and "made attempt-to-identify flyer[s]" for both suspects. The flyers were distributed among the CCPD. A detective recognized Williams, whose identity was confirmed through further investigation. About two weeks after the incident, Williams was arrested and charged.

---

[5] The defense did not assert these contentions during the N.J.R.E. 104(c) hearing. Defendant did not include his trial court brief in his appellate appendix. <u>See</u> <u>R.</u> 2:6-1(a)(2).

Egan explained law enforcement's attempts to identify defendant were met in vain until September 30, 2021, when the arresting officer on defendant's drug charges "believed that he looked like the individual from the attempt-to-identify-flyer." When Egan commenced his interview, he was unsure whether defendant had been charged with the drug offenses but acknowledged he did not intend to speak with defendant about those crimes. Egan testified he was "there to speak to him about . . . the robbery."

The video-recorded statement played for the judge confirmed defendant was advised of his Miranda rights, acknowledged he understood them, waived those rights, responded to all questions, and never asked to stop the interview or speak with an attorney. Defendant was fifty-two years old with seven prior convictions when questioned by Egan. The entire interrogation lasted seventeen minutes.

Egan began the interview by inquiring: "So what's up Mr. Mason? What happened today? Buddy, what, you just need money or something? Like what's going on?" Defendant acknowledged he purchased drugs "to go get high." Egan then inquired whether defendant was "down on [his] luck" and whether he had "done anything in the past" he regretted "because of drugs." Defendant said he sold drugs to support his drug habit.

Egan's questioning quickly turned to the CCPD's use of video cameras in "high crime areas." Egan showed defendant still photographs from the RT-TOIC footage on the day of the incident. Defendant identified himself and Williams in two separate photographs. But defendant vehemently denied any involvement in the robbery. Instead, defendant told Egan he saw Williams in front of the church and, referring to money owed from a previous drug transaction, yelled, "Yo, what's up with my dough?" As we elaborate below, Egan accused defendant of lying during the interrogation.

Following oral argument, the judge reserved decision and thereafter issued a cogent oral decision. The judge initially found

> a reasonable person would not have known with any certainty the interrogation was anything about the [robbery] charges until page nine, line eighteen [of the transcript] where the detective said, "I saw you go into the building, I saw you come out of the building, you want to explain to me what happened? Because did you hit the guy with the bat? Did he hit the guy with the bat?"[6]

However, the judge found Egan lacked "probable cause to charge . . . defendant with the robbery prior to the interview." Instead, "at most," defendant

_____

[6] The transcript referenced by the judge was not provided on appeal. The transcript of defendant's statement played during the N.J.R.E. 104 hearing spans twenty-one pages. Egan's comments referenced above were made on the fifth page of the hearing transcript.

was "a suspect who was under investigation" for robbery at that time. The judge further found the facts "d[id] not support a finding" that Egan "deliberately delayed seeking a complaint-warrant or arrest-warrant for defendant to avoid disclosing the charges he faced." Crediting Egan's testimony, the judge was convinced the September 30, 2021 robbery complaint-warrant was signed after the interview.

The judge further found the bright-line rule enunciated by our Supreme Court in State v. A.G.D., 178 N.J. 56 (2003), inapplicable to the circumstances presented here. As the judge correctly observed, in A.G.D., the Court held "[t]he government's failure to inform a suspect that a criminal complaint or arrest warrant has been filed or issued deprives that person of information indispensable to a knowing and intelligent waiver of rights." Id. at 68. In the present matter, the judge found no "strict per se A.G.D. violation because there were no charges pending against . . . defendant associated with the robbery at the time of the interrogation."

To support his ruling, the judge also cited the Court's more recent decision in State v. Sims, 250 N.J. 189, 214 (2022) (declining to extend A.G.D.'s bright-line rule to require suppression of a Mirandized statement where police fail to advise that the interrogee is a suspect). As the judge correctly recognized, the

Sims Court held if police "deliberately delay seeking a complaint-warrant or arrest-warrant . . . to avoid disclosing to an arrestee the charges that he [or she] faces," the motion court should consider "such bad-faith conduct . . . as part of the totality of the circumstances test." Id. at 216.

After finding A.G.D.'s bright-line rule inapplicable here and there was no evidence in the record charges were delayed, the judge turned to the totality-of-the-circumstances test under State v. Nyhammer, 197 N.J. 383, 402-03 (2009). Applying that test, the judge found defendant's Miranda waiver was knowing, voluntary, and intelligent. The judge elaborated:

> Defendant is a fifty-three-year-old with seven previous indictable convictions. He was read his constitutional rights pursuant to a preprinted form, which he initia[l]ed, indicating his understanding of the rights. The form was entered into evidence at the time of the hearing.
>
> He then participated in a seventeen-minute recorded interview, inclusive of the time spent on his Miranda rights, with no physical punishment or mental exhaustion exhibited. The questioning was neither improperly repeated nor prolonged in nature.
>
> Notwithstanding information related to defendant's education or intelligence, which was not addressed, defendant, with the exception of knowing the correct reason for the interview and then current detention, knowingly and intelligently waived his rights under Miranda and participated willingly in the interrogation where he confirm[ed] that he and his

> codefendant were present at the scene of the robbery, and further implicated co-defendant by stating, "[h]e went in there and fought the man and robbed him."

Our review of a trial court's decision on a suppression motion is circumscribed. State v. Ahmad, 246 N.J. 592, 609 (2021). Appellate courts "review the trial court's factual findings as to defendant's Miranda waiver in accordance with a deferential standard." State v. Tillery, 238 N.J. 293, 314 (2019). After a testimonial hearing, we "defer to the trial court's factual findings because the trial court has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). Deference is afforded because the court's findings "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999). Our deference includes the trial court's findings based on video-recorded or documentary evidence. See S.S., 229 N.J. at 374-81 (clarifying the deferential and limited scope of appellate review of factual findings based on video-recorded evidence); see also Tillery, 238 N.J. at 314; State v. McNeil-Thomas, 238 N.J. 256, 271-72 (2019).

"[A] trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction,'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting Elders, 192 N.J. at 244), or they are not "supported by sufficient credible evidence in the record," Tillery, 238 at 314 (quoting S.S., 229 N.J. at 374). Nonetheless, "[w]hen faced with a trial court's admission of police-obtained statements, an appellate court should engage in a 'searching and critical' review of the record to ensure protection of a defendant's constitutional rights." State v. L.H., 239 N.J. 22, 47 (2019) (quoting State v. Hreha, 217 N.J. 368, 381-82 (2014)). "A trial court's legal conclusions, 'however, and the consequences that flow from established facts,' are reviewed de novo." State v. Bullock, 253 N.J. 512, 532 (2023) (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

Although a defendant's statement is not excluded as hearsay in a criminal trial against the defendant, see N.J.R.E. 803(b)(1), the admissibility of the statement "is subject to [N.J.R.E.] 104(c)," see N.J.R.E. 803(b) (flush language). "It is the State that must prove, beyond a reasonable doubt, that a defendant's statement was voluntary and, if made while in custody, that the defendant knowingly, voluntarily, and intelligently waived the rights afforded . . . under Miranda." State v. Gore, 205 N.J. 363, 382 (2011). In determining whether a

Miranda waiver was made knowingly, intelligently, and voluntarily, "courts traditionally assess the totality of circumstances surrounding the arrest and interrogation," including the "suspect's previous encounters with the law." State v. Presha, 163 N.J. 304, 313 (2000); see also Nyhammer, 197 N.J. at 402 (2009).

We have considered defendant's contentions in view of the applicable law and conclude they lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons stated by the judge in his well-reasoned decision. The judge's factual findings are supported by the record, his credibility assessment warrants our deference, and his legal analysis comports with the governing legal principles.

We add only we reject defendant's belated reliance on State v. Diaz, 470 N.J. Super. 495 (App. Div. 2022). Diaz, decided four months before the N.J.R.E. 104(c) hearing in the present matter, involved a prosecution for a drug-induced death where the defendant argued his custodial statements to police should have been suppressed because the detectives deliberately did not inform him about the overdose death. Id. at 502. We held the detectives misled the defendant as to his "true status" when they gave a "deliberately vague and incomplete answer to his question as to the reason why he was taken into custody." Id. at 518. This "investigative stratagem" was intended to "withhold

information concerning the overdose death until after [the] defendant had admitted" he sold heroin to the decedent the day before. Ibid. "The reasonably likely if not intended effect of that artifice was to lead defendant—at the critical moment he waived his Fifth Amendment rights—to believe that he had been arrested for a less serious offense than strict liability homicide." Id. at 518-19.

Notably, however, we "[we]re satisfied that at the time [the] defendant was taken into custody, the detectives were aware of facts that, viewed collectively, would lead an objectively reasonable police officer to believe that [the] defendant was criminally responsible for the victim's death." Id. at 528. "We agree[d] with the trial court that . . . the detectives had probable cause to link [the] defendant to the death." Id. at 530.

Conversely in the present matter, Egan did not give defendant a deliberately vague and incomplete answer as to why he was taken into custody. Instead, Egan told defendant he was under arrest "for whatever happened earlier" that day. Egan did not ask defendant any questions about the circumstances of the unrelated drug charges. Nor did Egan withhold information that he was investigating a robbery. As the judge found, prior to the interrogation, police lacked probable cause for issuance of an arrest- or

15

complaint-warrant for robbery. Accordingly, <u>Diaz</u> is distinguishable from the totality of the circumstances presented here.

## II.

For the first time on appeal, in his second point, defendant argues he was deprived of a fair trial by the admission of Egan's unredacted comments from defendant's statement to police played for the jury. Those comments include Egan's opinion that defendant was lying during questioning, Egan's insistence that defendant was depicted in the video footage entering and exiting the building, and a reference to Egan's unrelated arrest. Citing our decisions in <u>State v. Tung</u>, 460 N.J. Super. 75 (App. Div. 2019) and <u>State v. C.W.H.</u>, 465 N.J. Super. 574 (App. Div. 2021), defendant first argues because Egan's opinion that defendant was lying is not permissible during live testimony, "Egan's repeated accusations" admitted through defendant's video-recorded statement "that [defendant] was lying likewise gutted the jury's ability to independently evaluate [his] credibility." Defendant further contends Egan's reference to his unrelated arrest was irrelevant and the court failed to issue a limiting instruction pursuant to N.J.R.E. 404(b). The State counters Egan's comments during questioning are distinguishable from impermissible in-court testimony and any error in their admission was invited. Conceding the reference to defendant's unrelated offense

16

"should have been redacted," the State argues its inclusion does not rise to plain error.

Prior to trial, defendant did not move to redact the statements he now challenges. During a pretrial conference, defense counsel mentioned his agreement with the prosecutor regarding certain unspecified redactions "for Driver[7] purposes." Defense counsel did not doubt the recording was "full and accurate," and agreed with the State's proposals, but needed additional time to determine whether further edits were necessary "for trial purposes." There is no evidence in the record that either party asked the judge to resolve any proposed redactions. Instead, at sidebar during Egan's direct examination, immediately prior to the introduction of defendant's recorded statement at trial, the parties confirmed they were "good with the editing." Defendant therefore did not object to the redacted statement played for the jury.

Nonetheless, before defendant's statement was played at trial, the judge issued the following limited instruction:

> Ladies and gentlemen of the jury, during the statement of Mr. Mason you are about to hear,

---

[7] State v. Driver, 38 N.J. 255, 287 (1962) (holding the admissibility of a sound recording is dependent upon the trial court's consideration of several factors, including whether any changes, additions, or deletions have been made to the recording).

Detective Egan is going to make reference to his opinions of the facts in this case.

Nothing Detective Egan says during the statement is evidence. You as the jury are the sole decider of the facts, including the credibility of any statements made by Mr. Mason. As such you are to disregard any opinions or descriptions of the facts presented during the interrogation by Detective Egan and make your own determinations as to the facts.

I'm going to repeat this instruction after the statement so that you have more context as to why I'm giving it. But understand what Detective Egan says during the statement . . . is not evidence.

The redacted statement was slightly under fourteen minutes in length, and excluded explicit references to defendant's drug charges and prior drug sales to support that habit. But the jury twice heard Egan state defendant was "under arrest . . . for . . . whatever happened earlier." The jury also heard Egan state defendant was lying fourteen times and insist defendant was depicted in the video footage. Defendant now objects to Egan's commentary.

Initially, referencing the church video footage depicting two individuals entering and exiting Yocco's business, Egan stated, "I don't want another lie coming out of a fifty-two-year-old grown man's mouth. . . . I saw you go in the building. I saw you come out of the building. Do you want to explain to me what happened?" Defendant adamantly denied entering the building for the

remainder of the interrogation, although at one point defendant mentioned "I came out of there" and was "the first one out." Defendant also implicated Williams stating "[h]e went in there and fought the man . . . [a]nd robbed him." Egan told defendant he needed to elaborate otherwise Egan would believe defendant was "just a cold-blooded individual, who just went into a business and beat the shit out of somebody."

Defendant now objects to each instance Egan stated defendant was lying, including, but not limited to:

- You're lying about things that could be explained. And you're going to go to prison.

- See here's the thing. The problem is when this goes to court and they see that you're lying. . . . Because when they pull the video and they see what you're doing. . . .

- So, if you want to tell me the truth -- so when this goes to court and it looks like you're sorry, and it looks like that you actually didn't do this, then I'll listen to you. If you don't and you want [to] stick to this story then I'll just hit play while we're in court and then you can explain to everybody why you lied.

At the conclusion of the statement, the court issued the following instruction:

> Again, during the statement of Mr. Mason, you heard Detective Egan make reference to his opinions of

A-2455-22

the facts in this case. Nothing Detective Egan said during the statement is evidence. You as the jury are the sole deciders of the fact, including the credibility of any statements made by Mr. Mason. As such, you are to disregard any opinions or descriptions of the facts presented during the interrogation by Detective Egan and make your own determinations as to the facts.

The judge issued the same instruction after defendant's statement was played during deliberations.

In addition, during his final instructions to the jury, consistent with the model jury charge, the judge instructed the jurors, "you are the judges of the facts and . . . as judges of the facts you are to determine the credibility of the various witnesses, as well as the weight to be attached to their testimony. You and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses, and the testimony to be attached to the testimony of each witness." See Model Jury Charges (Criminal), "Criminal Final Charge" (rev. Sept. 1, 2022). Specifically, regarding defendant's statement to Egan, the judge explained: "There is [sic] for your consideration in this case statements allegedly made by . . . defendant. It is your function to determine whether or not the statements were actually made by . . . defendant and if made whether the statements or any portions of them are credible." See Model Jury Charges (Criminal), "Statements of Defendant" (rev. June 14, 2010).

We apply a deferential standard of review to the trial court's evidentiary rulings.  See State v. Garcia, 245 N.J. 412, 430 (2021).  We will only reverse if the court's evidentiary rulings were "so wide of the mark that a manifest denial of justice resulted."  State v. Kuropchak, 221 N.J. 368, 385 (2015) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

"Under the invited error doctrine, 'trial errors that were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal.'"  State v. Munafo, 222 N.J. 480, 487 (2015) (quoting State v. A.R., 213 N.J. 542, 561 (2013)).  As our Supreme Court has explained, the invited error doctrine "does not permit a defendant to pursue a strategy . . . and then when the strategy does not work out as planned, cry foul and win a new trial."  State v. Williams, 219 N.J. 89, 101 (2014).  When considering whether an invited error requires reversal, we engage in "a close, balancing examination of the nature of the error, its impact on the . . . jury's verdict and the quality of defendant's motives and conduct in bringing about the error."  State v. Harper, 128 N.J. Super. 270, 278 (App. Div. 1974).

We have declined to apply the invited error doctrine where the defendant did not move before the trial court to redact certain accusations and opinions by the interrogating detectives but later argued on appeal he was prejudiced by

inclusion of that commentary.  State v. Cotto, 471 N.J. Super. 489, 534-35 (App. Div. 2022).  We held the "defendant's failure to ask for redaction of those statements/opinions [w]as [not] tantamount to an affirmative request that the jury be allowed to hear them."  Id. at 536-37.  We explained:

> The fact remains that the State introduced a version of the interrogation recording as trial evidence, and thus the State bore responsibility for its content. We thus conclude that for purposes of the invited-error doctrine, [the] defendant did not advocate an erroneous approach, much less induce the court to admit the portions of the interrogation recording that were played to the jury during the State's case-in-chief.
>
> [Id. at 537.]

In Cotto, however, we noted, during an "in limine hearing, the trial judge, defense counsel, and prosecutor carefully went through the transcript of the electronically-recorded interrogation to identify portions that needed to be redacted from the version that was to be played to the jury."  Id. at 533. Although we declined to find the defendant invited the error, we addressed his belated argument through the prism of the plain error standard, R. 2:10-2, and concluded the court erred by failing to issue a curative instruction, but found that error was not capable of producing an unjust result in view of "the strong admissible evidence proving guilt beyond a reasonable doubt."  Id. at 540-41.

22

Similarly, in the present matter, because the State moved into evidence defendant's redacted statement, the State "bore responsibility for its content." See id. at 537. We cannot conclude on this record that defendant "advocate[d] an erroneous approach." See ibid. Because the parties apparently agreed to the redactions without a judicial decision, defense counsel's reasons for permitting Egan's unredacted commentary are unclear from the record. We note only, on cross-examination, defense counsel asked Egan whether both suspects and witnesses lie. On this record, we cannot conclude defendant invited the errors he now challenges.

We therefore consider whether defendant's belated argument concerning the admission of Egan's unredacted commentary constituted plain error. Pursuant to Rule 2:10-2, where there was no objection to the claimed error at trial, we review the issue for plain error and may reverse only if the error was "clearly capable of producing an unjust result." As our Supreme Court has long recognized, "that high standard provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error." State v. Bueso, 225 N.J. 193, 203 (2016). Indeed, "[a] timely objection gives the trial court and the prosecutor an opportunity to counteract the effect of any unseemly remark," State v. Johnson, 31 N.J. 489, 511 (1960),

including the issuance of curative instructions, State v. Douglas, 204 N.J. Super. 265, 274 (App. Div. 1985). A defendant's failure to object leads to the reasonable inference that the issue was not significant in the context of the trial. See State v. Wilson, 57 N.J. 39, 51 (1970).

Defendant now argues Egan's opinions and commentary during defendant's recorded interview were impermissible for the same reasons they would have been improper had he made those comments while testifying at trial. Stated another way, defendant argues Egan's remarks constituted impermissible lay opinion regardless of the means by which the jury heard them.

New Jersey courts recognize a law enforcement officer's trial testimony cannot include "an expression of a belief in defendant's guilt." State v. McLean, 205 N.J. 438, 463 (2011). In McLean, our Supreme Court made clear permissible factual testimony by police "includes no opinion, lay or expert, and does not convey information about what the officer 'believed,' 'thought' or 'suspected,' but instead is an ordinary fact-based recitation by a witness with first-hand knowledge." Id. at 460. Thus, lay opinion testimony cannot opine about another witness's credibility, particularly where witness veracity is a pivotal point of dispute. See State v. Frisby, 174 N.J. 583, 595-96 (2002) (holding a police officer cannot testify that a defendant's statement is a lie); State

v. Branch, 182 N.J. 338, 351 (2005) (recognizing a police officer cannot "imply to the jury that he [or she] possesses superior knowledge, outside the record, that incriminates the defendant").

In Tung, we held while testifying at trial, police impermissibly opined about the defendant's lack of truthfulness. 460 N.J. Super. at 101. We cautioned:

> Police testimony concerning a defendant's guilt or veracity is particularly prejudicial because "[a] jury may be inclined to accord special respect to such a witness," and where that witness's testimony goes "to the heart of the case," deference by the jury could lead it to "ascribe[] almost determinative significance to [the officer's] opinion."
>
> [Id. at 102 (alterations in original) (quoting Neno v. Clinton, 167 N.J. 573, 586-87 (2001)).]

In the present matter, however, the parties have not cited, and our independent research has not revealed, any authority solely addressing the inclusion of inadmissible lay opinion in a statement admitted at trial when that same opinion could not be elicited from the police during their trial testimony. Nonetheless, although the presently disputed statements may serve a proper

purpose, if accompanied by a carefully worded curative instruction,[8] we agree with defendant that Egan's commentary and opinions were not proper for presentation to the jury. The disputed statements were lay opinions about defendant's truthfulness, a function solely entrusted to the jury. We therefore conclude Egan's opinions and commentary were erroneously admitted into evidence via defendant's recorded statement.

Ordinarily, we might conclude these errors were "clearly capable of producing an unjust result" under Rule 2:10-2. In this case, however, the judge sua sponte issued a curative instruction before and after defendant's statement was played for the jury, and after the statement was replayed in open court during deliberations. Further, in his final instructions, the judge explained the jurors were the sole judges of the facts and credibility of the witnesses. "Our Supreme Court 'has consistently stressed the importance of immediacy and specificity when trial judges provide curative instructions to alleviate potential prejudice to a defendant from inadmissible evidence that has seeped into a trial.'" C.W.H., 465 N.J. Super. at 595 (quoting State v. Vallejo, 198 N.J. 122, 135

---

[8] For example, our jurisprudence has long recognized police may utilize investigative techniques during interrogation to "persuade the person to talk . . . as long as the will of the suspect is not overborne." State v. Miller, 76 N.J. 392, 403 (1978).

(2009)). Further, "[o]ne of the foundations of our jury system is that the jury is presumed to follow the trial court's instructions." State v. Vega-Larregui, 246 N.J. 94, 126 (2021) (quoting State v. Burns, 192 N.J. 312, 335 (2007)).

We conclude the risk that Egan's statements might have led the jury to a verdict it would not otherwise have reached was ameliorated by the issuance of a limiting instruction regarding how the jury should consider the detective's remarks. We therefore cannot conclude the inclusion of Egan's remarks deprived defendant of a fair trial.

Defendant similarly challenges the inclusion of Egan's comments about defendant's arrest for other charges. Defendant belatedly claims those remarks should have been excluded from the statement played for the jury as other-crime or bad act evidence under N.J.R.E. 404(b), and State v. Cofield, 127 N.J. 328, 338 (1992) (establishing a four-pronged test for evaluating the admissibility of "other crimes, wrongs, or acts" evidence under N.J.R.E. 404(b)). In the alternative, defendant contends the judge should have sua sponte issued a limiting instruction when the statement was admitted in evidence and during the final charge.

Pursuant to N.J.R.E. 404(b)(1), "evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a

particular occasion the person acted in conformity with such disposition." As the Court has recognized, "N.J.R.E. 404(b) '[is] a rule of exclusion rather than a rule of inclusion.'" State v. Willis, 225 N.J. 85, 100 (2016) (quoting Marrero, 148 N.J. at 483). Accordingly, "evidence of uncharged misconduct would be inadmissible if offered solely to prove the defendant's criminal disposition, but if that misconduct evidence is material to a non-propensity purpose . . . , it may be admissible if its probative value is not outweighed by the risk of prejudice." State v. Rose, 206 N.J. 141, 159 (2011).

In its responding brief on appeal, the State acknowledges Egan's comments about defendant's arrest for other charges should have been redacted from the statement played at trial. Thus, the State does not argue Egan's remarks were admissible under any theory authorized by N.J.R.E. 404(b). As the State notes, however, Egan's comments about defendant's arrest were fleeting. Further, the prosecutor did not mention defendant's arrest for other charges in his closing remarks. Defense counsel, however, alluded to Egan's remarks by suggesting the detective did not care why defendant was in custody because he "just" wanted defendant to "sign" the "Miranda waiver." Although Egan's comments that defendant was "under arrest" for "whatever happened earlier" were improper, on this record, we cannot conclude the inclusion of the remarks

in defendant's statement constituted plain error under Rule 2:10-2. Similarly, we are not convinced the trial judge committed plain error by failing to instruct the jury sua sponte to disregard the detective's fleeting remarks.

Moreover, although circumstantial, the evidence against defendant was substantial, based in large part on his statement that he was present at the scene with Williams, whom defendant implicated. We recognize Yocco did not identify defendant, but the video surveillance footage was unrefuted. In view of the court's curative and final instructions, and the weight of the evidence against defendant, we conclude Egan's remarks were not "so egregious that [they] deprived the defendant of a fair trial." State v. McGuire, 419 N.J. Super. 88, 139 (App. Div. 2011) (quoting State v. Ramseur, 106 N.J. 123, 322 (1987)).

III.

For the first time on appeal, in his third point, defendant challenges the prosecutor's closing remarks, contending "the prosecutor denigrated defense counsel's argument[s] as mere 'distractions,' comparing them to distractions that magicians employ in their 'tricks' and 'illusions.'" Defendant argues the prosecutor's "extended metaphor about magic" effectively served "to confuse the jury with distractions and hide the simple facts in front of them [sic]."

Defendant claims the prosecutor's comments interfered with the jury's ability to independently weigh the evidence, warranting reversal of his convictions.

"New Jersey courts have commented repeatedly on the special role filled by those entrusted with the responsibility to represent the State in criminal matters, observing that the primary duty of a prosecutor is not to obtain convictions but to see that justice is done." State v. Williams, 471 N.J. Super. 34, 43 (App. Div. 2022) (quoting State v. Smith, 212 N.J. 365, 402-03 (2012)). "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999). They may even do so "graphically and forcefully." State v. Pratt, 226 N.J. Super. 307, 323 (App. Div. 1988).

"[P]rosecutorial misconduct can be a ground for reversal where the prosecutor's misconduct was so egregious that it deprived the defendant of a fair trial." Frost, 158 N.J. at 83. For example, "[i]t is well settled that prosecutors are not permitted to cast unjustified aspersions on the defense or defense counsel." State v. Rodriguez, 365 N.J. Super. 38, 50 (App. Div. 2003); see also Frost, 158 N.J. at 86. "Even if the prosecutor exceeded the bounds of proper conduct, however, that finding does not end our inquiry." Williams, 471 N.J.

Super. at 45. We will only reverse if the misconduct was "so egregious that it deprived the defendant of a fair trial." Frost, 158 N.J. at 83.

"Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." State v. R.B., 183 N.J. 308, 333 (2005). "Failure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made," and "deprives the court of the opportunity to take curative action." State v. Timmendequas, 161 N.J. 515, 576 (1999). Proper curative instructions generally remove the potential prejudice resulting from improper closing remarks. See Smith, 212 N.J. at 409.

We review the prosecutor's closing remarks "within the context of the trial as a whole." State v. Feaster, 156 N.J. 1, 64 (1998). Because defendant did not object to the prosecutor's summation remarks, we review for plain error. R. 2:10-2; see also State v. Ross, 229 N.J. 389, 407 (2017).

With these principles in view, we consider the prosecutor's remarks within the context of the evidence adduced at trial and defense counsel's summation. In his closing remarks, defense counsel compared the State's investigation to "[f]un children's games," such as "broken telephone," where someone mistakenly or purposely mishears what was spoken, "affect[ing] what comes out

on the other end" of the phone.  Arguing such games were "no way to run a police investigation," defense counsel methodically addressed the missteps and omissions in the present investigation.

In that context, the prosecutor's remarks about magic tricks and distractions may be viewed as an attempt to refocus the jurors on the evidence that was "right in front of [them]."  The prosecutor elaborated:

> And a lot of what the defense wants you to believe are distractions.  Not all.  And I don't want you to sit here and I think I'm going to downplay everything that happened in this case.  I'm not.
>
> Certain things that were brought up I agree with. I'll discuss those as we go through -- as I take you through the State's evidence.  Now remember the State has got the burden here.  I've got the burden to prove to you beyond a reasonable doubt.
>
> . . . .
>
> But I want to point out the reasons why you shouldn't be distracted from the things that were brought up before.  I want to start with a couple things that were brought up by the defense before we get into the evidence itself.

The prosecutor then addressed defense arguments he deemed, "distractions," and conceded other arguments "that maybe [we]ren't distractions."

Although the prosecutor's "distraction" comments may have skirted the line, the remarks were far less disparaging than those in the cases cited by

32

defendant.  For example, in <u>State v. Lockett</u>, 249 N.J. Super. 428, 434 (App. Div. 1991), the prosecutor argued:

> the best defense counsel, when the evidence is so overwhelming that it really makes your gut wrench, what do you do, you don't say look at the evidence, you say look over in the corner of the room, by God, look at some smoke in the corner of the room. . . . I don't want you to look at the defendant's conduct, I don't want you to look at the circumstances of the case, I don't want you to look at the facts because, if you look at the facts, I'm crushed.  My defendant is guilty.

Notwithstanding these comments, we reversed only in view of "[t]he accumulation of error[s]," including the improper admission of inflammatory photographs of the victim's body, improper questions on cross-examination of defendant, and other improper comments in summation.  <u>Id.</u> at 431-36.

When viewed in the context of defense counsel's closing arguments, the entirety of the prosecutor's summation, and "the trial as a whole," <u>Feaster</u>, 156 N.J. at 64, we cannot conclude defendant was deprived his right to a fair trial. Moreover, in its final charge, the court issued the standard instruction that "[a]rguments, statements, remarks, openings and summations of counsel are not evidence and must not be treated as evidence."  <u>Model Jury Charge (Criminal)</u>, "Final Charge" (rev. Sept. 1, 2022).  Again, we presume the trial judge's instructions were followed.  <u>See</u> <u>Vega-Larregui</u>, 246 N.J. at 126.

IV.

Finally, we reject defendant's contention, raised in point IV, that the cumulative effect of the errors committed during his trial warrants reversal. Defendant has failed to demonstrate any error or pattern of errors, rising to the level, either singly or cumulatively, that denied him a fair trial. "A defendant is entitled to a fair trial but not a perfect one." R.B., 183 N.J. at 334.

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, vacated and remanded in part, solely to correct the JOC. Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2455-22